**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE APPLICATION OF VICTOR DRAKE HANNA FOR AN ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS UNDER 28 U.S.C. § 1782 | Case No. 1:25-00225RA |

### <u>*AMENDED* EX PARTE APPLICATION FOR DISCOVERY UNDER 28 U.S.C. § 1782</u>

Pursuant to 28 U.S.C. § 1782 ("Section 1782") and based on the accompanying Memorandum of Points and Authorities and Declaration of Paul A. Rigali, Victor Drake Hanna (the "Applicant") submits this amended application for discovery, seeking an order permitting the Applicant to issue the subpoenas in the form attached as Exhibits A to the Memorandum of Points and Authorities directing Dechert LLP ("Dechert") to produce documents for use in foreign proceedings.

Section 1782 provides for discovery in the United States to assist parties in proceedings before foreign or international tribunals. In relevant part, Section 1782 states:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation. The order may be made . . . upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

The statutory requirements of Section 1782 are satisfied in this case. As explained in the accompanying Memorandum of Points and Authorities, (1) Dechert "resides" or "is found" in this District; (2) the discovery sought is "for use in" foreign proceedings; and (3) the Applicant is an "interested person" in those foreign proceedings.  Also as explained in the Memorandum of Law, the discretionary factors that a court may consider when evaluating a Section 1782 application favor granting this Application.  *See Intel Corp. v. Advanced Micro Devices, Inc.*,

542 U.S. 241, 264–66 (2004).

For the reasons set forth above, and in the accompanying Memorandum of Points and Authorities, the Applicant respectfully moves the Court to issue an order granting this application and authorizing the issuance of the subpoena in the form attached to the Memorandum of Points and Authorities as Exhibits A.

Dated:  February 13, 2026

By:/s/ *Hilary Potashner*

    Hilary Potashner (Bar 3009487)
    Stephen G. Larson
    (Pro Hac Vice Admission Pending)
    Paul A. Rigali
    (Pro Hac Vice Admission Pending)
    LARSON LLP
    555 South Flower Street, 30th Floor
    Los Angeles, California 90071
    Telephone:   (213) 436-4888
    Email: hpotashner@larsonllp.com
          slarson@larsonllp.com
          prigali@larsonllp.com

    Attorneys for Applicant
    VICTOR DRAKE HANNA

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE APPLICATION OF VICTOR DRAKE HANNA FOR AN ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS UNDER 28 U.S.C. § 1782 | Case No. 1:25-00225-RA |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF VICTOR DRAKE HANNA'S *AMENDED* APPLICATION FOR AN ORDER TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782**

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ........................................................................................................ 1

II.  FACTUAL BACKGROUND ..................................................................................... 2

III.  ARGUMENT ............................................................................................................. 6

    A.  Legal Standard ............................................................................................... 6

    B.  Mr. Hanna Satisfies The Statutory Requirements Of 28 U.S.C. § 1782 ................. 7

        1.  Dechert "Resides" In The Southern District Of New York ........................ 7

        2.  The Discovery Sought Is For Use In Foreign Proceedings........................ 8

        3.  Mr. Hanna Is An "Interested Person" ........................................................ 9

    C.  All Of The Discretionary *Intel* Factors Favor Granting Discovery ....................... 9

        1.  First *Intel* Factor: Dechert Is Not A Party To The Foreign Proceeding.... 10

        2.  Second *Intel* Factor: Nothing Suggests That The English Court Would Not Receive Discovery Conducted In The United States ............................... 10

        3.  Third *Intel* Factor: This Application Is Proper Under English Discovery Law ............................................................................................................ 11

        4.  Fourth *Intel* Factor: The Requested Discovery Is Appropriately Limited 12

IV.  CONCLUSION ......................................................................................................... 12

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re Accent Delight Int'l Ltd.*,
    869 F.3d 121 (2d Cir. 2017).................................................................................9

*In re Application for an Order Permitting Metallgesellschaft AG to Take Discovery*,
    121 F.3d 77 (2d Cir. 1997)..............................................................................7, 12

*In re Application of OOO Promnesftstroy for an Order to Conduct Discovery for Use in a Foreign Proceeding*,
    No. M 19-99(RJS), 2009 WL 3335608 (S.D.N.Y. Oct 15, 2009) ...........................11

*In re Bayer AG*,
    146 F.3d 188 (3d Cir. 1998)...............................................................................12

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
    673 F.3d 76 (2d Cir. 2012).......................................................................6, 7, 9, 11

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014)............................................................................................7

*In re del Valle Ruiz*,
    939 F.3d 520 (2d Cir. 2019).................................................................................7

*In re Edelman*,
    295 F.3d 171 (2d Cir. 2002)..................................................................................7

*Euromepa S.A. v. R. Esmerian, Inc.*,
    51 F.3d 1095 (2d Cir. 1995).............................................................................7, 11

*Hertz Corp. v. Friend*,
    559 U.S. 77 (2010)..............................................................................................8

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004)................................................................................... *passim*

*Inv. Vehicles v. KPMG, L.L.P.*,
    798 F.3d 113 (2d Cir. 2015).................................................................................9

*In re Mangouras*,
    No. 17-MC-172, 2017 WL 4990655 (S.D.N.Y. Oct. 30, 2017) ...............................8

**Federal Statutes**

28 U.S.C.
    § 1782........................................................................................................................... *passim*
    § 1782(a) ...................................................................................................................10, 11

I.      **INTRODUCTION**

The Applicant is a former executive of Eurasian Natural Resources PLC ("ENRC"), a multinational diversified natural resources company which was until 2013 headquartered in London, United Kingdom and once a listed FTSE 100 company.

Following whistleblowing complaints from one of ENRC's employees, ENRC retained Dechert and its partner, Neil Gerrard, in 2011 to handle an internal investigation into one of its subsidiaries. The investigation by Mr. Gerrard kept expanding in scope and, in April 2013, the UK Serious Fraud Office ("SFO") commenced a criminal investigation against ENRC. This investigation lasted over 10 years and was only dropped in August 2023 when the SFO announced that it had "*insufficient admissible evidence*" to prosecute. ENRC and Mr. Hanna had long raised concerns with Dechert about the internal investigation by Mr. Gerrard and the subsequent opening of a criminal investigation by the SFO but any of their concerns were dismissed outright.

ENRC commenced civil proceedings against Dechert and Mr. Gerrard in 2017 and the SFO in 2019.  ENRC alleged that Mr. Gerrard had breached his duties as a solicitor for leaking confidential and / or privileged information to the press and had wrongly advised ENRC on the approach it should take on its engagement with the SFO. The company further alleged that Mr. Gerrard had instigated one or more of the leaks that resulted in the damaging media articles, had had several unauthorized conversations with the SFO in which forthcoming media articles were discussed, and that he was making unauthorized document disclosures to the SFO in June 2013. As a result of that conduct, the fees for the work on the investigations were substantially inflated. It was alleged that Mr. Gerrard was motivated by a desire to secure greater fee revenue and to ingratiate himself with the SFO. The claims against Dechert and Mr. Gerrard were satisfied in

May 2022 and the English court found that Dechert and Mr. Gerrard breached their duties and were negligent in relation to the "*contractual, tortious, and fiduciary duties*" to ENRC.  See *Executive Summary of ENRC v Dechert, Mr Gerrard, and the SFO [2022] EWHC 1138.*

The Applicant was specifically targeted by Mr. Gerrard throughout his retainer who undertook a ruthless and vindictive attack on Mr. Hanna's character. Despite being notified of the egregious conduct of Mr. Gerrard, Dechert did nothing to stop him from attacking the integrity of Mr. Hanna. It was only after the successful claim by ENRC against Dechert and Mr. Gerrard in December 2022, that Mr. Hanna was made truly aware of the extent of the misconduct by Dechert against him personally. He now wishes to seek redress against Dechert for the wrongs committed against him before the English courts. This Application seeks discovery from Dechert as to its nefarious conduct and cover-up of Mr. Gerrard.

This Application meets all of the requirements for seeking discovery for use in foreign proceedings under 28 U.S.C. § 1782.  First, Dechert "resides" and is "found" in the Southern District of New York.  Second, the discovery sought by Mr. Hanna is highly material to the issues at stake in imminent foreign proceedings in tort and under data protection legislation to which Mr. Hanna is an "interested party."  Last, each of the discretionary factors laid out in the Supreme Court's *Intel* decision favor granting discovery.  Mr. Hanna thus respectfully requests that the Court grant his Application and permit him to seek discovery from Dechert.

## II.    FACTUAL BACKGROUND

Mr. Hanna is a U.S. citizen and international businessman. From 2009 until the end of 2014, he was a Head of Strategy and the CEO for Africa at ENRC, leading their expansion efforts into Africa.

ENRC was a was a publicly listed, Kazakhstan and Central African-focused,

multinational diversified natural resources company headquartered in London, United Kingdom. It had activities in integrated mining, processing, energy, logistics and marketing.

Following concerns by a whistleblower at ENRC about the company's activities in Kazakhstan, ENRC engaged Mr. Gerrard of Dechert in 2011 to conduct an internal investigation into its Kazakh business. This investigation kept expanding and soon encompassed also ENRC's African affairs.

The SFO, tasked with investigating and prosecuting serious financial crime, wrote to ENRC in August 2011, the day after publication of adverse media about the company. Following advice from Mr. Gerrard, ENRC agreed in November 2011 to engage with the SFO as part of a so-called 'self-reporting' process.

ENRC became Dechert's most lucrative client worldwide, with Dechert's fees totalling GBP 13 million. ENRC's engagement with the SFO, led by Mr. Gerrard, continued until March 2013 when ENRC terminated Dechert's retainer. Just days after terminating the engagement with Dechert, the SFO opened a criminal investigation into ENRC, which lasted over a decade and was only concluded when the SFO announced in 2023 that it had insufficient admissible evidence to prosecute.

In 2017, ENRC brought civil proceedings against Dechert and Mr. Gerrard, alleging reckless breaches of their fiduciary duties in connection with an internal investigation carried out by Dechert. ENRC also brought proceedings against the SFO, alleging that SFO officers had induced Mr. Gerrard's breaches of duty in a series of clandestine meetings and communications.

In the first judgment handed down in May 2022, the court found that there was a "*gross and deliberate breach of duty*" by Dechert and Mr. Gerrard. Mr. Gerrard leaked privileged material to the press and gave ENRC "*scaremongering*" advice that had "*no foundation in fact*".

3

Despite knowing full well that Mr. Gerrard could not have been acting properly, SFO senior officers repeatedly engaged in "*conspiratorial*" whispers with Mr. Gerrard, behind ENRC's back. *ENRC v Dechert, Mr Gerrard, and the SFO [2022] EWHC 1138.*

Throughout the internal investigation by Mr. Gerrard, Mr. Hanna was made into a scapegoat by Mr. Gerrard who did not shy away from coercing witnesses to provide false evidence about Mr. Hanna and fabricating false evidence adverse to Mr. Hanna. Mr. Hanna raised concerns about Mr. Gerrard's conduct with him and Dechert. Mr. Gerrard's response to this criticism was a counterattack by way of a narrative that Mr. Hanna obstructed investigations and was the subject of "smoking gun" evidence regarding corruption in Africa.

Dechert failed to take any action in respect of Mr. Gerrard's apparent misconduct. ENRC and Mr. Hanna's representatives notified Dechert as early as 2013 that they had information that Mr. Gerrard was disseminating privileged information obtained during his representation of ENRC to the press and to third parties. ENRC also demanded that Dechert immediately take steps to ensure that Mr. Gerrard and Dechert cease and desist from disseminating any information concerning ERNC (including Mr. Hanna) and that it conduct a full and independent investigation of Mr. Gerrard's conduct and communications. Dechert refused to conduct such investigation and refused to address Mr. Gerrard's misconduct.

The decision in *ENRC v Dechert, Mr Gerrard, and the SFO* is resounding in its conclusion that ENRC's allegations were not a baseless attack and underscored that Dechert and Mr. Gerrard breached their duties and were negligent in relation to ENRC. The English court rejected contentions that Mr. Hanna obstructed Dechert's investigation and found that Mr. Hanna was the target of Mr. Gerrard's leaks, misrepresentations, and manipulation. Although Mr. Hanna had complained to ENRC about the wrongs committed by Dechert and Mr. Gerrard

4

against him personally, it was only when the decision was issued that Mr Hanna was made aware that he could seek personal redress against them.

In December 2023, a second judgment in ENRC's claim against Dechert found that but for the SFO's wrongdoing—instigated by Mr. Gerrard—the SFO would not have commenced the criminal investigation. This misconduct was the effective cause of losses that ENRC sustained in the form of unnecessary legal fees and wasted time. Mr. Hanna was in the same position in relation to unnecessary fees and time. *ENRC v Dechert, Mr Gerrard, and the SFO [2023] EWHC 3280 (Comm)*.

Indeed, the judgments paint a clear picture of misconduct between Dechert and Mr. Gerrard, as it should given the evidence revealed during the underlying proceedings. It is clear to Mr. Hanna that Dechert and Mr. Gerrard intentionally leaked false and defamatory information regarding Mr. Hanna.

Had Dechert undertaken the investigation demanded by ENRC so many years ago, Mr. Hanna and other victims of Dechert's efforts to infect the SFO's investigations could have reasonably observed the actions caused—and continue to cause—harm to their reputations, livelihood, and health. Dechert, however, opted to conceal the egregious conduct of its agents and to use the false information Mr. Gerrard obtained to instigate numerous publications attacking the integrity of Mr. Hanna. In sum, Dechert and Mr. Gerrard undertook a ruthless and vindictive attack on Mr. Hanna's character.

Although the SFO did not prosecute Mr. Hanna or any other individual investigated because of Mr. Gerrard's and Dechert's nefarious conduct, the SFO's investigation dragged on years longer than it would have if Dechert would have made even a modest attempt to mitigate Mr. Gerrard's wrongdoing. Thus, Dechert caused grievous injuries to Mr. Hanna by damaging

5

his reputation, interfering with his employment and contractual relationships with third parties who have refused to contract with Mr. Hanna because of the SFO's investigation.

Mr. Hanna now intends to seek redress for the wrongs inflicted on him. To support Mr. Hanna's civil claim against Dechert in England, Mr. Hanna requires discovery about Dechert's role in covering up Mr. Gerrard's misconduct.

## III.    ARGUMENT

### A.    Legal Standard

Section 1782 permits United States District Courts to grant discovery for use in a pending or "reasonabl[y] contemplat[ed]" foreign proceedings. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 259 (2004). An application made under Section 1782 must satisfy three statutory requirements: "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012).

After determining that the three statutory requirements are satisfied, courts then consider four discretionary factors in deciding whether to grant a Section 1782 application: (1) whether discovery sought is within the foreign tribunal's jurisdictional reach, and thus accessible absent Section 1782 aid; (2) the receptivity of the foreign government or court to U.S. federal-court judicial assistance; (3) whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the subpoenas contain unduly intrusive or burdensome requests. *See Intel*, 542 U.S. at 264-65.

In general, courts in this circuit "evaluate discovery requests under section 1782 in light of the statute's twin aims of providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1097 (2d Cir. 1995); *In re Application for an Order Permitting Metallgesellschaft AG to Take Discovery*, 121 F.3d 77, 79 (2d Cir. 1997). Both the Supreme Court and the Second Circuit have acknowledged a Congressional intent to provide a liberal avenue to discovery in aid of foreign proceedings. *See, e.g.*, *Intel*, 542 U.S. at 247-48; *Brandi-Dohrn*, 673 F.3d at 80 ("[T]he statute has, over the years, been given increasingly broad applicability."); *In re Edelman*, 295 F.3d 171, 179-80 (2d Cir. 2002) ("In sum, Congress has expressed as its aim that the statute be interpreted broadly . . . .").

**B.     Mr. Hanna Satisfies The Statutory Requirements Of 28 U.S.C. § 1782**

Mr. Hanna's Application satisfies the three statutory requirements of Section 1782: (1) Dechert "resides" and is "found" in the Southern District of New York; (2) the requested information is "for use in" future foreign proceedings before the English courts; and (3) Mr. Hanna is an "interested person" as the future claimant in a planned civil claim before the English courts.

1.     Dechert "Resides" In The Southern District Of New York

Section 1782's "'resides or is found' language extends to the limits of personal jurisdiction consistent with due process." *In re del Valle Ruiz*, 939 F.3d 520, 528 (2d Cir. 2019) (quoting 28 U.S.C. § 1782(a)). A defendant LLC is subject to general personal jurisdiction in its state of incorporation and in the state housing its principal place of business. *See Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (concluding that a defendant LLC was not subject to general

7

jurisdiction in California because the defendant was not "incorporated in California, nor d[id] [it] have its principal place of business there").

Here, Dechert maintains a principal place of business at 3 Three Bryant Park, 1095 Avenue of the Americas, New York, NY, United States, thereby subjecting it to general jurisdiction in this district. Specifically, James Lebovitz, Dechert's COO and Mark E. Thierfelder, co-Chair of Dechert are stated to be resident in Dechert's New York office. *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010) ("We conclude that 'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities."); s*ee* Ex. C. The concentration of Dechert's executive officers at its New York office amply demonstrates that the New York office serves as one of its principal places of business. Dechert thus "resides" and "is found" in this district.

2.    The Discovery Sought Is For Use In Foreign Proceedings

As to the planned English proceedings, Mr. Hanna will use the requested material to support his civil claim in the UK.

As to the future actions against Henderson, "[w]here an applicant has not yet initiated a foreign proceeding, [Section 1782] discovery is available when the materials may help the applicant either to plead or to prove the anticipated claims. Indeed, 'the foreign proceeding need not be pending, so long as it is within reasonable contemplation.'" *In re Mangouras*, No. 17-MC-172, 2017 WL 4990655, at *5 (S.D.N.Y. Oct. 30, 2017) (quoting *Mees v. Buiter*, 793 F.3d 291, 299 (2d Cir. 2015)); *Intel*, 542 U.S. at 259 (foreign proceeding need not have actually commenced at the time when Section 1782 discovery is sought; it need only "be within reasonable contemplation"). Here, Mr. Hanna will use the requested information about Dechert's ignorance about Mr. Gerrard's misconduct to prove his civil claims in the UK.

8

Mr. Hanna is not required to show that the information sought would be discoverable or admissible in the foreign proceedings. *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012) ("[A]s a district court should not consider the discoverability of the evidence in the foreign proceeding, it should not consider the admissibility of evidence in the foreign proceeding in ruling on a section 1782 application."). Rather, Mr. Hanna needs only to show that he has "the practical ability . . . to place a beneficial document—or the information it contains—before a foreign tribunal." *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 131 (2d Cir. 2017).

Mr. Hanna plainly satisfies this requirement. The information sought in the attached Subpoena is highly material to foreign tribunals in England because the requested information will tend to prove civil allegations against Dechert and Mr. Gerrard.

### 3. Mr. Hanna Is An "Interested Person"

Finally, Section 1782 requires persons seeking discovery to show that they possess a reasonable interest in the foreign proceedings.

For the planned civil action in England, there is "[n]o doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782." *See Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 120 (2d Cir. 2015); *see Intel*, 542 U.S. at 256. Mr. Hanna thus qualifies as an "interested person" under Section 1782.

### C. All Of The Discretionary *Intel* Factors Favor Granting Discovery

Once an applicant satisfies the threshold requirements under Section 1782, the Court then considers the four discretionary "*Intel* factors." Here, each factor favors granting the requested discovery.

*First*, Dechert is not currently a party to any English civil proceedings with Mr. Hanna through which the contemplated discovery could be obtained. *Second*, there is no reason to believe that an English court would not be receptive to evidence obtained through Section 1782 discovery. *Third*, Mr. Hanna is acting in good faith and is not seeking to avoid any foreign restriction on gathering evidence. *Fourth*, Mr. Hanna's single subpoena is carefully circumscribed and targeted to key facts so as to avoid undue burden on Dechert.

      1.     First *Intel* Factor: Dechert Is Not A Party To The Foreign Proceeding

The first *Intel* factor asks whether the party from whom discovery is sought is a party to the foreign proceeding. "[W]hen the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Intel*, 542 U.S. at 264. Indeed, even if Dechert were to assert that it is amenable to subjecting itself to discovery in England, relief should be granted because a Section 1782 applicant is not required to first seek the discovery in the foreign tribunal. See *Veiga*, 746 F. Supp. 2d at 23 (finding that the first factor weighed in favor of the applicant despite the respondent possibly being subject to the foreign tribunal's jurisdiction and the respondent's stated willingness to submit to its jurisdiction); *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1098 (2d Cir. 1995) (noting the lack of a "quasi-exhaustion requirement . . . that would force litigants to seek information through the foreign or international tribunal before requesting discovery from the district court") (internal quotations omitted).

      2.     Second *Intel* Factor: Nothing Suggests That The English Court Would Not Receive Discovery Conducted In The United States

Under the second *Intel* factor, this Court looks to whether the foreign tribunal would be

receptive to evidence obtained through Section 1782. *See In re Application of OOO Promnesftstroy for an Order to Conduct Discovery for Use in a Foreign Proceeding*, No. M 19-99(RJS), 2009 WL 3335608, at *7 (S.D.N.Y. Oct 15, 2009) (describing the second *Intel* factor as inquiring into whether the foreign proceeding would "*reject* evidence obtained with the aid of section 1782"). Courts presume that the foreign tribunal will be receptive to evidence obtained in the United States "[a]bsent specific directions to the contrary from a foreign forum[.]" *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1102 (2d Cir. 1995). A court should deny discovery on the basis of lack of receptiveness only upon "authoritative proof that [the] foreign tribunal would reject evidence obtained with the aid of section 1782." *Id.* at 1100.

Because nothing suggests that and English courts would refuse this Court's assistance, this factor weighs in Mr. Hanna's favor.

3. <u>Third *Intel* Factor: This Application Is Proper Under English Discovery Law</u>

The third *Intel* factor looks to "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. The *Intel* Court expressly rejected the notion that Section 1782 requires that the evidence sought must be discoverable in the foreign proceeding itself, and the Second Circuit has added that the specific documents or testimony discovered need not be admissible abroad. *See Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012) ("While *Intel* concerned the discoverability of evidence in the foreign proceeding, we see no reason why it should not extend to the admissibility of evidence in the foreign proceeding. As in *Intel*, there is no statutory basis for any admissibility requirement."); *Intel*, 542 U.S. at 261 ("A foreign nation may limit discovery within its domain for reasons peculiar to its own legal

11

practices, culture, or traditions—reasons that do not necessarily signal objection to aid from United States federal courts."). Nor is there any requirement that Mr. Hanna must exhaust his remedies in the foreign court first. *See In re Application for an Order Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d 77, 79 (2d Cir. 1997) ("[A] 'quasi-exhaustion requirement' finds no support in the plain language of the statute and runs counter to its express purposes.").

Here, there is no reason to believe that any of the discovery sought violates any foreign laws or public policy. Mr. Hanna does not seek customer account information, state secrets, or attorney-client communications—he merely seeks information that will aid in proving Dechert's misconduct. England has no law or public policy against such discovery.

                4.        Fourth *Intel* Factor: The Requested Discovery Is Appropriately Limited

The fourth *Intel* factor looks to whether the requests are "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. The standard is substantially the same as in ordinary domestic civil litigation under the Federal Rules of Civil Procedure. "The reference in § 1782 to the Federal Rules suggests that under ordinary circumstances the standards for discovery under those rules should also apply when discovery is sought under the statute." *In re Bayer AG*, 146 F.3d 188, 195 (3d Cir. 1998).

Here, Mr. Hanna has carefully circumscribed his subpoena requests to specific information in Dechert's possession. Producing specific documents will not impose an undue burden on Dechert.

## IV.    CONCLUSION

For the foregoing reasons, Mr. Hanna respectfully requests that the Court (a) grant the Application And Petition For An Order To Conduct Discovery; (b) enter the Proposed Order; (c)

and authorize Mr. Hanna, pursuant to 28 U.S.C. § 1782, to serve the attached Subpoena.

Dated:  February 13, 2026                          By:/s/ *Hilary Potashner*

Hilary Potashner (Bar 3009487)
Stephen G. Larson
(Pro Hac Vice Admission Pending)
Paul A. Rigali
(Pro Hac Vice Admission Pending)
LARSON LLP
555 South Flower Street, 30th Floor
Los Angeles, California 90071
Telephone:  (213) 436-4888
Email: hpotashner@larsonllp.com
        slarson@larsonllp.com
        prigali@larsonllp.com

Attorneys for Applicant
VICTOR DRAKE HANNA

13